**CITY OF BLUE ASH, Ohio,
Plaintiff-Appellant,**

**v.**

**Dr. John L. McLUCAS, Administrator, Federal Aviation Administration and Federal Aviation Administration, Defendants-Appellees.**

No. 77–3300.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 12, 1979.

Decided April 17, 1979.

Robert T. McConaughy, Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for plaintiff-appellant.

William W. Milligan, U. S. Atty., Gerald Kaminski, Asst. U. S. Atty., Cincinnati, Ohio, Lawrence C. Moore, Eloise E. Davies, Civil Div., U. S. Dept. of Justice, Sandra Dawahare, Atty., Federal Aviation Administration, Washington, D. C., for defendants-appellees.

Before WEICK, CELEBREZZE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

This case concerns the efforts of a municipality to prevent jet aircraft from using a general aviation airport located within its city limits. The plaintiff City of Blue Ash is a charter municipal corporation under the laws of Ohio. The City of Cincinnati, also a charter municipal corporation, owns the Cincinnati-Blue Ash Airport (the airport). The airport is operated by the Hamilton County Regional Airport Authority (regional airport authority), which was organized and exists under Ohio statutory law.

Prior to 1972 Cincinnati applied for a federal grant in connection with certain improvements which have now been installed or constructed at the airport. Subsequently the regional airport authority became a co-sponsor of the application. The Blue Ash City Council was originally opposed to the project when a 4,000 foot paved runway was proposed. However, by a resolution adopted April 22, 1971 the Blue Ash Council withdrew its opposition to an application providing for a paved 3,500 foot

runway. The preamble to this resolution contained the following language:

WHEREAS, improvement of the Blue Ash Airport in such a manner as to better serve general aviation but deter usage by jet aircraft will enhance the Blue Ash area and will be beneficial to the community.

The City Council of Cincinnati then adopted a resolution agreeing with the purposes and intent of the resolution of the Blue Ash Council. In its resolution the Cincinnati Council agreed to the following condition in connection with its application for a federal grant:

Jet aircraft shall be by published rule prohibited, except under emergency conditions, from using said Cincinnati Municipal Airport, Blue Ash Field.

The regional airport authority adopted a resolution on January 10, 1972 containing almost identical wording.

After the new paved runway and other improvements were completed the Federal Aviation Administration (FAA) published two limitations on use of the Blue Ash Airport. One of the limitations was that the airport is closed to jet aircraft "not meeting FAR 36 noise limits." This information was set forth in the "Airport Directory" section of an FAA informational publication known as the "Airman's Information Manual." The notice was published by the FAA at the request of the Hamilton County Regional Airport Authority. The Blue Ash Council then passed a resolution requesting the FAA to amend its publication by deleting "not meeting FAR 36 noise limits." The effect of such an amendment would be that the publication would contain an unqualified statement that the airport is closed to jet aircraft. Upon being advised by the FAA that it did not intend to change the remarks contained in the manual "unless otherwise advised by the airport owner or operator," Blue Ash filed the present action.

Alleging a cause of action under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 et seq., Blue Ash sought a mandatory injunction requiring the FAA to delete the words "not meeting FAR 36 noise limits" from the manual, and publication of an interim notice to airmen (NOTAM) to this effect. The plaintiff's theory of the case is set forth in paragraph 25 of its complaint:

25. Defendants, in funding development of the airport, recognized and agreed to abide by the resolutions and agreements in force at the time, which is reflected in the Environmental Impact Statement. Pursuant to said recognition and agreement Defendants have a legal obligation to delete the words "not meeting FAR 36 noise limits" from the Airport Directory and to publish an interim NOTAM to this effect regarding the Cincinnati-Blue Ash Airport.

The district court granted the defendants' motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted. Rule 12(b), Federal Rules of Civil Procedure.

On appeal the plaintiff argues that "the district court erred in holding that there cannot be a cause of action to require a federal agency to perform commitments, which are solely within its power to perform, set forth in its [Environmental Impact Statement]." The final environmental impact statement (EIS) for the Blue Ash Airport project contains the following language:

. . . It has been agreed and stipulated in the resolution of the City of Blue Ash, (71–13), the City of Cincinnati, (96–1971), and the Hamilton County Regional Airport Authority, that the use of this airport will be denied to turbojet and large turbofan aircraft by published NOTAM.

This appears to be the language referred to in paragraph 25 of the complaint by which the defendants are alleged to have "recognized and agreed to abide by resolutions in force at the time . . . ."

As the district court noted the complaint does not charge that the EIS is inadequate or assert that a new EIS is required for the

project.[1] The entire thrust of the complaint, and of the briefs and oral argument in this court, is that NEPA creates a cause of action to enforce "commitments" of third parties which are incorporated in the EIS of the federal agency involved in a project. Blue Ash supports this argument primarily by reference to dicta in *Sierra Club v. Mason*, 365 F.Supp. 47 (D.Conn.1973). In *Mason* a party who conceded that an EIS satisfying NEPA had been filed sought its modification to prohibit departure from commitments contained in the EIS. The district court in *Mason* denied the request for modification and held it would be inappropriate to decide whether there existed a legally enforceable right to have commitments of an EIS enforced on the record before it. *Mason* is not persuasive authority for the proposition which Blue Ash puts forth in this case.

While it appears that all the parties involved in improving the Blue Ash airport contemplated that jet aircraft would not be permitted to use it, it is equally clear that the FAA was not a party to an agreement to prevent such use. While it recognized the agreements in force by referring to them in the EIS, there is no indication that the FAA agreed to be bound by them or responsible for their enforcement. The regulation which permits jets that meet FAR 36 noise limits[2] to use the airport was promulgated by the regional airport authority, one of the original parties to the agreement that jet aircraft would not be permitted to use the airport. The logical method of enforcing this agreement would be an action by Blue Ash against the City of Cincinnati and the regional airport authority. In fact, the record indicates that such an action is presently pending in a state court. The federal government has preempted control of the national airspace to a degree sufficient to prevent state and local governments and agencies from using their police powers to control noise by regulating the flight of planes. However, this preemption has not affected the right of such state and local agencies, *as proprietors*, to establish permissible noise levels by regulations. *Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 635–36 and n. 14, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). Since the FAR 36 notice originated with the City of Cincinnati and the regional airport authority as owner and operator of the Blue Ash Airport, the doctrine of preemption has not ousted the state courts of jurisdiction over the action between those parties and Blue Ash.

Reduced to its essentials the theory on which Blue Ash relies in arguing that its complaint stated a claim for relief is that the publication of the notice in the Airman's Informational Manual was itself actionable. Blue Ash concedes that the EIS was adequate, but contends that NEPA creates a cause of action for an injunction to prevent any act by a federal agency which is contrary to provisions of a final EIS. It is clear that there is no explicit provision to this effect in NEPA. Blue Ash seeks to bolster its argument that such a cause of action is implicit in NEPA by asserting that the act of the FAA in publishing the notice to airmen was a "major federal action." Section 102(C) of NEPA, 42 U.S.C. § 4332(C), requires a detailed statement of the environmental impact of "proposals for legislation and other major Federal actions significantly affecting the quality of the human environment . . . ." Courts which have sought to define "major federal action" have done so in terms of such requirements as "substantial planning, time, resources, or expenditure." See *Natural Resources Defense Counsel, Inc. v. Grant*, 341 F.Supp. 356, 366–67 (E.D.N.C.1972); see also *Julius v. City of Cedar Rapids*, 349 F.Supp. 88 (N.D.Iowa 1972); *Township of Ridley v. Blanchette*, 421 F.Supp. 435 (E.D. Pa.1976).

---

1. Blue Ash states in its opening brief on appeal, "Obviously, appellant is not seeking a new EIS. Appellant would be satisfied if the advisory is amended to prohibit all jet traffic, as contemplated by the EIS."

2. FAR 36 refers to the noise standard for subsonic jet aircraft published in 14 CFR Part 36 (1969).

We think it is clear that the mere issuance of a notice to pilots that an airport is closed to all jet aircraft which do not meet prescribed noise limits, though it has the effect of permitting use of the field by jets which do meet the limits, is not a "major Federal action[] significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(C). Nothing in *Virginians for Dulles v. Volpe*, 541 F.2d 442 (4th Cir. 1976), or *Illinois v. Butterfield*, 396 F.Supp. 632 (N.D.Ill.1975), relied upon by Blue Ash, leads to a contrary conclusion. Nor do this court's decisions in *Environmental Defense Fund v. T.V.A.*, 468 F.2d 1164 (6th Cir. 1972), or *Ohio ex rel. Brown v. Callaway*, 497 F.2d 1235 (6th Cir. 1974), support appellant's theory. In both of those cases the plaintiffs sought injunctive relief on the ground that no adequate EIS had been filed. Such an action has consistently been held to be permissible under NEPA.

We conclude that the district court properly held that the complaint in this case failed to state a claim upon which relief can be granted against the only defendants named—the FAA and its administrator. Blue Ash is still free to pursue its remedies against the parties whose commitments it claims have been broken. The pending state court action would appear to offer a vehicle for early resolution of the dispute between Blue Ash and the proprietor and operator of the airport. .

The judgment of the district court is affirmed.